```
                    IN THE UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NORTH CAROLINA
                             EASTERN DIVISION


UNITED STATES OF AMERICA,       )
                                )
                                )
                                ) Case No.
                                ) 4:12-CR-00054-FL-1
                                )
NIGEL OMAR GRAY,                )
              Defendant.        )
```
___

SENTENCING HEARING, NOVEMBER 7, 2013
BEFORE DISTRICT JUDGE LOUISE WOOD FLANAGAN
NEW BERN, NORTH CAROLINA
___

**FOR THE GOVERNMENT:**

William Glenn Perry
Assistant U.S. Attorney
215 South Evans Street, Suite 206
Greenville, North Carolina  27858


**FOR THE DEFENDANT:**

Jonathan Trapp
James D. Williams, Jr.
The Law Offices of James D. Williams, Jr., P.A.
3400 Croasdaile Drive, Suite 205
Durham, North Carolina  27705

PROBATION OFFICER:  Gabe Hardison


        Proceedings recorded by mechanical stenography,
transcript produced by computer.
___

**DAVID J. COLLIER, RMR, CRR**
FEDERAL OFFICIAL COURT REPORTER
413 MIDDLE STREET
NEW BERN, NC  28560

```
 1                     P R O C E E D I N G S
 2                         - - - o0o - - -
 3             THE COURT:  All right.  We'll go first with Mr. Gray.
 4             Mr. Perry, with respect to the Government's motion,
 5    would you prefer this to be heard in a sealed setting?
 6             MR. PERRY:  Yes, Your Honor.
 7             THE COURT:  Okay.  We'll go ahead and seal the
 8    courtroom.
 9                            - - - - -
10     Court entered a sealed session at 9:35 a.m.  Transcript filed
11                    under seal under separate cover.
12       Proceedings in open court resumed at 9:53 and continued as
13                                follows:
14                            - - - - -
15             THE COURT:  I'm also familiar not only with the
16    offense conduct but with your criminal history, and it began at
17    the age of 18 with common-law robbery, possession of heroin at
18    the age of 24, conspiring to sell or deliver marijuana at the
19    age of 26, accessory after the fact at the age of 26, and I
20    linger on your conduct as described at the age of 29 or 30
21    where there's a very strong suggestion that you murdered
22    Travis Thomas in Greenville.  You were originally charged with
23    first degree murder and the charge was dismissed in lieu of a
24    lesser charge of assault with a deadly weapon.  Your criminal
25    history we discussed puts you in Category VI.
```

I'm aware of your family background, your health,
education, substance abuse issues, and there do appear to be
some.  You did graduate from high school.
          I do find that the scoring needs to be adjusted in
this presentence report, and I sustain the defendant's
objection to the two level enhancement for making threats and I
sustain the objection to the firearm enhancement predicated on
that same boast that you would surround the confidential
informant with men holding guns the next day, so that takes
points off, but you're captured by your status, which promotes
a total offense level of 34 due to you being a career offender,
and this changes the advice of the guidelines to 262 to 327
months, but are there any other objections that you wish to be
heard on?
          MR. TRAPP:  No, Your Honor.
          THE COURT:  So the defendant is withdrawing those?
          MR. TRAPP:  That is correct, Judge.
          THE COURT:  And that's what you want to do,
defendant?
          THE DEFENDANT:  Yes.  Yes, ma'am.
          THE COURT:  So noted.
          And I think at least one of your objections wouldn't
have had any bearing on the guidelines anyway.
          All right.  So it's left to the Court to decide a
sentence that's reasonable but not greater than necessary, that

reflects on the nature of the offense, your background and history, the need to discourage this type of conduct, to promote respect for the law and to protect the public and to provided any needed treatment for you as well.

I've heard from the Government, I believe, that it believes something less than a guideline sentence accomplishes that purpose; is that correct, Mr. Perry?

MR. PERRY: That's correct, Your Honor.

THE COURT: And I believe you suggested you thought 157 months was a sentence that's sufficient but not greater than necessary.

MR. PERRY: Yes, Your Honor.

THE COURT: What does the defendant have to say?

MR. TRAPP: Well, Judge, we've had a chance to look at the guidelines, look at the information we spoke about before and look at prior cases that we have either conducted or witnessed, and we felt that a reduction below 159 months might be more appropriate just based on the vast amount of information we provided before. Our hope was that a reduction of 50 percent, which would bring us to 131 months, would be appropriate, just based on -- we understand the circumstances of the charges and the idea that selling and buying drugs in the community is a problem, it's rampant in big communities and small communities alike. We also understand the idea that this operation may have spanned different states, not just

North Carolina, but potentially New York and New Jersey, so on and so forth, based on where these drugs were coming from, but we also understand that he has shown his desire to cut his ties, that he has learned his lesson, that he really does want to move forward, that his greatest concern more than anything else isn't the fact that he is incarcerated for an extended period of time, but the fact that his family is safe and secure.

I think when balancing all these different aspects, his conduct before he was charged and thereafter, a reduction of 50 percent would be reasonable and prudent and would still show a deterrent act for Mr. Gray, who is going to be incarcerated for at least ten years of his life, and that's time he's going to miss from -- his son is going to graduate from high school in the next three years and his other three children, and the opportunity to be with his wife and his mother, and for those reasons we believe at least a sentence of 131 months would be appropriate.

THE COURT: Mr. Gray, is there anything you would like to say?

THE DEFENDANT: Yes, ma'am. Before this all happened, you know, I was really trying to change my life, you know, I moved away from North Carolina because I know with me being here, it will lead me back into the things that I was doing, so I moved away. I was trying to get my life together.

1  Like right before I caught the charge I was supposed to have
2  started school like two weeks after that, supposed to start
3  school for audio engineering.  So, you know, I take this as a
4  blessing because it helps me break away from what I was doing
5  before, break away from the people.  I no longer have ties with
6  them.  I no longer want to be involved with the gang activity,
7  none of that.  I mean, I just -- I just want a new beginning.
8        And as far as the murder case, I want to speak upon
9  that too, because it's like the situations that I was in, I was
10  forced to protect myself, because it was my birthday when this
11  happened, it was my birthday, and I had just left from partying
12  on my birthday, and some people that had problems with me
13  behind some other people that I'm known to associate with --
14  like it was never a problem with me, but they had problems with
15  me behind someone else, so they -- they had threatened me
16  before, so like I didn't have no gun, I had got a gun from
17  somebody else out there, and it was like -- like a split second
18  time, because I seen somebody pull a gun from the other people
19  that threatened me, so I grabbed somebody else's gun, and it
20  was an issue -- a shootout issue and that's how the person got
21  killed, but I didn't do it, like the person -- I can't -- I
22  don't want to go on the record to say that somebody -- that the
23  other person actually did it, because I actually didn't see
24  them do it, but I know I didn't kill the man, but I was charged
25  for it, but I still went to prison for assault on the other

dude, on the other dude that was shooting also.  So I just want to make that clear too, because like I was put in a predicament where I had to protect myself.  I just wanted to make that clear, and I just -- I just need a new beginning.  Like I know once I get out of here, I can't even live in North Carolina area again.  Like I know my mother right now, she said right after I get sentenced she's trying to get my name changed so that people can't like actually look me up, try to find me, because I know my life had been threatened.

THE COURT:  That's smart.

THE DEFENDANT:  My kids have been threatened.

THE COURT:  I think that's smart, to get your name changed.

THE DEFENDANT:  So she's working on that as soon as I get sentenced so my name won't be coming up on no paperwork, nothing like that.  So I just wanted to make that clear and let you know like I apologize for all the wrong that I done.  I mean, I just want to start new.

THE COURT:  Okay.  Well, I've considered the advice of the guidelines specifically and generally in this case and the factors set forth in 18 United States Code Section 3553, and it's the Court's decision pursuant to the Sentencing Reform Act of 1984 that you be committed to the custody of the Bureau of Prisons to serve a prison term of 131 months.  That's a sentence that's sufficient but not greater than necessary.

When you get out of prison you'll be supervised for
five years.  If you break any law, possess a weapon or drugs
illegally, you'll be in violation of the Court's judgment.
There are some other standard conditions and some special ones.

                While you're supervised, you'll participate in a
program approved by the probation office for the treatment of
addiction or dependency, you'll consent to warrantless searches
of your person, your motor vehicle, your house, all to
determine your compliance with the Court's judgment.  You'll
cooperate in the collection of DNA.  There's a $100 special
assessment.

                You've got a lot of children to support, and I'm not
going to impose a fine for that reason.  I'm not going to deny
you Federal benefits.  I'm going to recommend you for the most
intensive treatment program in the Bureau of Prisons for
addiction or dependency.  I'm going to recommend you for
further vocational training and educational opportunities.

                I also think some mental health treatment would be
beneficial to you, and I hope that to the extent the Bureau of
Prisons can provide some of that, that you would take advantage
of it.

                Now, when you're on supervised release I'm going to
add another special condition, that you provide information to
your probation officer about your efforts to get a job, to keep
a job, that you provide financial disclosures when required or

1    requested, that you not open up any new lines of credit unless
2    your probation officer has approved, and I'm also going to
3    request that the probation office consider consumer or
4    financial counseling, consumer credit or financial counseling
5    for you.
6             All right.  Now, is there anything further from the
7    defendant that you would wish the Court to consider?
8             MR. TRAPP:  Judge, I know you had mentioned drug
9    treatment while he was in custody, and we would also request,
10   since he does have family that lives in North Carolina, if you
11   could make a request with the Bureau of Prisons for him to be
12   stationed at Butner.
13            THE COURT:  All right.  I'll add that to my
14   recommendation.
15            MR. TRAPP:  Thank you, Judge.
16            THE COURT:  And, Mr. Perry, from the Government?
17            MR. PERRY:  Thank you, Your Honor.  No.
18            THE COURT:  And from the Probation Office?
19            PROBATION OFFICER:  No, Your Honor.
20            THE COURT:  Now, Mr. Gray, you can appeal if you
21   believe there's something very wrong with your conviction or
22   the sentence.  You did enter into a plea agreement that had
23   waivers in it of your rights to appeal.  Those waivers, as you
24   were told, are generally enforceable, but if you believe they
25   are not, you can present your theory to the Court above.  With

1  very few exceptions any notice of appeal has to be filed within
2  14 days from the date the judgment goes on the docket.  If you
3  can't afford the cost an appeal, you can apply for permission
4  to appeal for free, and if you request, the Clerk will fill out
5  the appeal paperwork for you.
6          Does your client have any questions about his appeal
7  rights?
8          MR. TRAPP:  No, Judge.
9          THE COURT:  Well, it looks like you have been very
10 well-served by Mr. Williams and his colleague.  You'll get
11 credit for time served, and I truly hope that you're sincere,
12 as I perceive you to be, about disassociating yourself from
13 these elements.  Moving away is a great thing, and you've
14 already recognized that.  You'll get credit for time served.
15          Thank you, gentlemen.
16          I'll put you back in the custody of the Marshal
17 Service.
18          MR. TRAPP:  Thank you, Your Honor.
19          THE COURT:  Thank you.
20                         - - - - -
21              (Proceedings concluded at 10:06 a.m.)
22                         - - - - -
23
24
25


# CERTIFICATE

This is to certify that the foregoing transcript of proceedings taken in a sentencing hearing in the United States District Court is a true and accurate transcript of the proceedings taken by me in machine shorthand and transcribed by computer under my supervision, this the 19th day of March, 2020.

/S/ DAVID J. COLLIER

DAVID J. COLLIER
OFFICIAL COURT REPORTER